```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/17/2021    
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Tzvee Wood and Andrea Malester,

                          Plaintiffs,

-against-

Mutual Redevelopment Houses, Inc.; Penn South Cooperative Federal Credit Union; Penn South Social Services, Inc.; Carmen Santiago a/k/a Carmen Angelico; Brendan Keany, each in their professional and individual capacities; and John and Jane Does 1-50,

                          Defendants.

19 Civ. 9563 (AT)

**ORDER**

ANALISA TORRES, District Judge:

      Plaintiffs *pro se*, Tzvee Wood and Andrea Malester, bring this action alleging claims against Defendants, Mutual Redevelopment Houses, Inc. ("Mutual"), Penn South Cooperative Federal Credit Union ("PSCFCU"), Penn South Social Services, Inc. ("PSSS"), Carmen Santiago, Brendan Keany, and John and Jane Does 1–50, arising from a dispute over Plaintiffs' application to purchase an income-limited apartment in New York City. Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. ECF Nos. 40, 45–46. Plaintiffs failed to file opposition papers. Plaintiffs also appeal the Honorable Debra C. Freeman's June 9, 2021 text order (the "June Order"), ECF No. 72, setting a final deadline for Plaintiffs to oppose Defendants' motions. ECF No. 76. For the reasons stated below, Defendants' motions are GRANTED and the June Order is AFFIRMED.

# BACKGROUND[1]

I. The Parties

Plaintiffs *pro se*, Tzvee Wood and Andrea Malester, are both Jewish. Compl. ¶ 56. Wood "belongs to the protected classes including, but not limited to: race, religion, marital status, age, familial status, lawful occupation, legal source of income, and disability." *Id.* ¶ 58. Defendant Mutual is a housing cooperative that operates under an agreement with the City of New York (the "City"). *Id.* ¶¶ 3–4. Defendants Carmen Santiago and Brendan Keany are Mutual employees. *Id.* ¶¶ 8–17.

II. Plaintiffs' 2012 Dispute with Mutual

On September 17, 2014, Plaintiffs filed an action in this district (the "First Action") against Defendants Mutual, the City Department of Housing Preservation and Development, PSCFCU, and twenty-one individuals, which was assigned case number 14 Civ. 7535. *See Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 14 Civ. 7535 (S.D.N.Y. Sept. 17, 2014). Plaintiffs brought sixteen causes of action alleging discrimination on the basis of age, religion, familial status, and source of income; breach of contract; violation of Plaintiffs' civil rights; and other associated state and city law claims. First Action Compl., First Action ECF No. 1 ¶¶ 143–257.[2] All of these claims were based on Plaintiffs' 2012 application to purchase an income-limited apartment in New York City. *See id.* ¶¶ 43, 85–89. Despite repeated requests

---

[1] The Court presumes familiarity with the facts as set forth in ECF No. 19. Because this action largely reiterates claims made in Plaintiffs' first action, *Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 14 Civ. 7535 (S.D.N.Y. Sept. 17, 2014) (the "First Action"), the Court also refers to the facts in its March 31, 2016 order on Defendants' motions to dismiss, First Action ECF No. 70, and the facts in its September 14, 2021 order on Defendants' motion for summary judgment, First Action Summary Judgment Order, First Action ECF No. 344. *See Bussa v. Educ. All., Inc.*, No. 14 Civ. 449, 2014 WL 4744556, at *2 (S.D.N.Y. Sept. 24, 2014) ("[A] district court reviewing a motion to dismiss may also consider documents of which it may take judicial notice, including prior decisions in related lawsuits.").

[2] Documents filed in the First Action are cited as "First Action ECF No. __." Documents filed in this action are cited as "ECF No. __."

for information about Wood's income to determine whether he was eligible for an apartment, Wood provided no such documentation. First Action Summary Judgment Order at 3–8, 15–17, First Action ECF No. 344. After extensive back-and-forth, on October 9, 2012, Mutual told Wood that his application would be placed on hold, and that as soon as he (1) had been employed for one year, (2) submitted a state tax return reporting one full year of income, and (3) submitted a letter from his employer attesting to his full-time employment, he would receive a "one time only apartment offer," the refusal of which would result in Wood being removed permanently from the waitlist. *Id.* at 8; Compl. ¶¶ 63–64. Wood has not met those requirements. Summary Judgment Order at 17.

Plaintiffs claim that Keany swore that "all prospective tenants, except for Tzvee Wood, have timely submitted copies of their income tax returns and/or proof of employment and/or income." Compl. ¶ 80. Plaintiffs also allege that "Mutual considers the creditworthiness of incoming tenant-shareholders through various methods, including credit reports." *Id.* ¶ 281. Plaintiffs state that they "were financially qualified for credit including any credit relating to the apartment" and that their "qualifications were based upon factors including, but not limited to, income." *Id.* ¶¶ 377–78.

In this action, Plaintiffs allege that PSCFCU and PSSS "refus[ed] to accept service" of subpoenas in connection with the First Action, and that this refusal was retaliatory. *Id.* ¶¶ 383–424.

III.    Plaintiffs' 2017 Dispute with Mutual

On October 11, 2017, five years and two days after Plaintiffs' application was placed on hold, it was reactivated. *Id.* ¶ 73. According to Plaintiffs, Santiago stated that Mutual has a policy for "freez[ing]" an application for a "period of up to five years." *Id.* ¶ 75. Plaintiffs claim

3

that their application was placed on "hold," not a "freeze," and then converted to a "freeze" at some point. *Id.* ¶¶ 65–66, 75–76, 211–15. According to them, this "hold" process was "crafted specifically for" Plaintiffs in an attempt to "create an artificial timeline by which Plaintiffs would be forced to accept or reject an apartment at Mutual." *Id.* ¶¶ 83, 95.

On November 3, 2017, Mutual offered Unit 4C at 340 West 28th Street to Plaintiffs. *Id.* ¶¶ 109–10. Plaintiffs allege that the "2012 hold letter and 2017 offer sheets" provided conflicting information about the number of offers they could reject, and that Santiago indicated that Mutual's board was in the process of increasing the number of rejections available to applicants. *Id.* ¶¶ 112–13. Wood claims that, on November 7, 2017, he "made a reasonable accommodation request in writing" to Santiago and Mutual to not count his refusal of Unit 4C as one of his available rejections. *Id.* ¶¶ 125, 128. Wood states that he provided documentation identifying his medical condition to Mutual, upon its inquiry. *Id.* ¶ 126. When Mutual requested a more detailed accommodation request, Wood alleges that he requested more information from Mutual regarding their "allocation policies and policies for how disability accommodations are processed." *Id.* ¶¶ 130–32. Plaintiffs allege that Mutual "provided unnecessarily lengthy responses" to Wood's requests, "wrote excessively long letters[,]" and "engaged in an excessive amount of inquiry[.]" *Id.* ¶¶ 135, 149, 162.

After months of back-and-forth, on June 5, 2018, Mutual wrote to Wood, stating that he "fail[ed] to explain how [he has] an impairment that substantially limits one or more major life activit[ies]." *Id.* ¶ 146. Mutual asked Wood for more information "to understand what the next apartment to be shown to [him] should have as a prerequisite in terms of minimum qualifications." *Id.* ¶ 168. At some point, Wood contacted disability rights groups for

4

assistance, *id.* ¶ 189, but Plaintiffs do not allege that the unspecified groups provided them with any guidance.

Plaintiffs bring claims for discrimination and retaliation under 42 U.S.C. § 1982, the Equal Credit Opportunity Act (the "ECOA"), the New York State Human Rights Law (the "NYSHRL"), the New York City Human Rights Law (the "NYCHRL"), and the Fair Housing Act (the "FHA"). *Id.* ¶¶ 428–34. Plaintiffs also bring claims under 42 U.S.C. § 1985, New York General Business Law ("GBL") §§ 349–50, and the Fair Credit Reporting Act (the "FCRA"). *Id.* ¶¶ 435–38.

IV. Procedural History

On October 11, 2019, Plaintiffs filed this action against the same Defendants[3] in the First Action. ECF No. 1. On November 8, 2019, the Court ordered Plaintiffs to show cause in writing, by November 22, 2019, why this case should not be dismissed as duplicative of Plaintiffs' earlier-filed actions. ECF No. 4 at 3. On November 19, 2019, Plaintiffs requested an extension, until December 11, 2019, to respond to the Court's order to show cause. ECF No. 5. On November 21, 2019, the Court granted Plaintiffs' request and extended the time to respond to December 11, 2019. ECF No. 6. Although docketed on December 17, 2019, Plaintiffs submitted their response to this Court's order to show cause on December 11, 2019. ECF No. 8. On November 13, 2020, the Court found that Plaintiffs had shown cause as to why this case should not be dismissed as duplicative because the complaint alleges that Defendants retaliated against Plaintiffs in 2017 and denied their request for a reasonable accommodation. ECF No. 19 at 3–4. That same day, the Court referred the case to Judge Freeman for general pretrial matters. ECF No. 20.

---

[3] In both actions, Plaintiffs named Defendants Mutual, PSCFCU, Santiago, and Keany. Although Plaintiffs did not name PSSS in the First Action, Plaintiffs subpoenaed that party in the First Action. *See* First Action ECF No. 201-2.

On December 4, 2020, Judge Freeman entered a briefing schedule on Defendants' motions to dismiss. ECF No. 36. Defendants' motions were due by February 17, 2021, and Plaintiffs' opposition papers were due by April 7, 2021. *Id.* On March 13, 2021, Plaintiffs requested an extension until April 19, 2021, to oppose Defendants' motions, or to amend the complaint. ECF No. 61. On April 5, 2021, Plaintiffs again requested an extension until May 3, 2021. ECF No. 62. On April 8, 2021, Judge Freeman granted Plaintiffs' request and extended their deadline until May 3, 2021. ECF No. 64. On May 1, 2021, Plaintiffs requested yet another extension until June 1, 2021. ECF No. 65. On May 4, 2021, Defendants consented to the extension until June 1, 2021, "provided that this is made a final deadline[.]" ECF No. 66. On May 18, 2021, Plaintiffs made an additional request for more time, noting that they "are continuing to work toward the June 1, 2021 deadline and prefer to keep this as a control date at this time." ECF No. 67 at 1. On May 19, 2021, Defendants opposed this request. ECF No. 68. On May 19, 2021, Judge Freeman granted Plaintiffs' extension request until June 1, 2021, and stated that "[t]his deadline will not be extended further without specific and extraordinary cause shown." ECF No. 69. On May 30, 2021, Plaintiffs filed a letter dated May 27, 2021, asking whether confidential documents exchanged between the parties would remain sealed. ECF No. 70. On June 9, 2021, Judge Freeman directed Plaintiffs to move to seal in accordance with her individual practices, and extended Plaintiffs' deadline "one final time," to June 15, 2021. June Order. She noted that, "[i]f Plaintiffs fail to meet this final deadline, this Court will deem Defendants' motions to dismiss to be unopposed." *Id.*

On June 26, 2021, Plaintiffs requested additional time to object to the June Order. ECF No. 74. Plaintiffs also requested that their deadline to file their opposition papers be extended until after the Court's order on their forthcoming objections. *Id.* On June 28, 2021, the Court

granted Plaintiffs' request for additional time to file objections, but denied their application to stay briefing on the motion to dismiss until after the Court's ruling on their objections. ECF No. 75. On July 12, 2021, Plaintiffs filed their objections. Pl. Obj., ECF No. 76. On July 16, 2021, Defendants filed their opposition papers. ECF No. 79. On July 22, 2021, Plaintiffs requested more time to file a reply to Defendants' opposition to their objections. ECF No. 81. On July 27, 2021, the Court denied Plaintiffs' request for leave to file a reply, ECF No. 82; however, Plaintiffs filed their reply on August 3, 2021, ECF No. 83.

To date, Plaintiffs have not opposed Defendants' motions to dismiss.

## DISCUSSION

I. Standard of Review

    A. Motion to Dismiss

"[A]lthough a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *McCall v. Pataki*, 232 F.3d 321, 322–23 (2d Cir. 2000). Accordingly, "the plaintiff's failure to respond to a Rule 12(b)(6) motion does not [itself] warrant dismissal," and the district court must determine whether dismissal of the complaint is appropriate on the merits. *Id.* at 323.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions." *Twombly*, 550 U.S. at 555. Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* The court must accept

7

the allegations in the complaint as true and draw all reasonable inferences in the non-movant's favor. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Moreover, as Plaintiffs are proceeding *pro se*, the Court must read their pleadings liberally and interpret them to state the strongest claims they suggest. *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999). That said, pleadings cannot survive by making "naked assertions devoid of further factual enhancement," and a court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quotation marks, citations, and alterations omitted). Additionally, a court should reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quotation marks and citation omitted), and "bald assertions . . . unsupported" by details which are insufficient to meet the minimum pleading requirements for a cause of action, *Lawtone-Bowles v. N.Y.C. Hous. Auth.*, No. 13 Civ. 1434, 2014 WL 705272, at *2–3 (S.D.N.Y. Feb. 20, 2014).

On a Rule 12(b)(6) motion, the Court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, or documents that the plaintiff knew about and relied upon. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks and citation omitted); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."). This means that the Court may consider documents known to, or in the possession of, Plaintiffs which underlie their factual allegations. *See Chambers*, 282 F.3d at 153. When assessing the pleadings along with attached documents, the Court "need not accept as true an allegation that is contradicted by documents on

which the complaint relies." *In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004).

B. Rule 72 Objections

Federal Rule of Civil Procedure 72(a) provides that the district judge to whom a case is assigned shall consider a party's objection to a magistrate judge's order on a non-dispositive matter and shall "modify or set aside any part of the order that is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). An order is clearly erroneous if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quotation marks and citation omitted). An order is contrary to law when it fails to apply or misapplies relevant statutes, caselaw, or rules of procedure. *Travel Sentry, Inc. v. Tropp*, 669 F. Supp. 2d 279, 283 (E.D.N.Y. 2009).

II. PSCFCU and PSSS

Plaintiffs allege that PSCFCU and PSSS retaliated against them by refusing service of subpoenas in connection with the First Action. Compl. ¶¶ 383–423. Generally, claim preclusion applies if "(i) an earlier action resulted in an adjudication on the merits; (ii) that earlier action involved the same counterparty or those in privity with them; and (iii) the claim sought to be precluded was raised, or could have been raised, in that earlier action." *Walden v. City of New York*, No. 21 Civ. 0785, 2021 WL 3500912, at *2 (S.D.N.Y. Aug. 9, 2021) (quotation marks and citation omitted).

Plaintiffs raised the issues of PSCFCU's and PSSS's refusal of service before Judge Freeman in the First Action. First Action ECF No. 213. Judge Freeman rejected their claims, First Action ECF No. 249 at 18–19, and the Court overruled Plaintiffs' objections to Judge Freeman's order, First Action ECF No. 265. Plaintiffs are now precluded from litigating these

9

same issues in a new action, even though they have repackaged these allegations as retaliatory. *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 157 (2d Cir. 2017) ("A party cannot avoid the preclusive effect of *res judicata* by asserting a new theory or a different remedy." (quotation marks and citation omitted)).

Additionally, the only other allegations as to PSCFCU involve Plaintiffs' inability to obtain a mortgage to fund the purchase of the apartment. Plaintiffs, however, only allege that they were "financially qualified for credit including . . . a mortgage on the apartment equity shares through PSCFCU[,]" but do not allege that they applied to PSCFCU for a mortgage. Compl. ¶ 377. There is no indication that PSCFCU had any material interaction with Plaintiffs. Therefore, Plaintiffs' allegations are insufficient to state a claim against PSCFCU, and Plaintiffs' claims against it are DISMISSED.

Similarly, there are no other allegations in the complaint that PSSS had any meaningful interaction with Plaintiffs. *See* Compl. Plaintiffs' allegations are insufficient to state a claim against PSSS. Plaintiffs' claims against PSSS are, therefore, DISMISSED.

### III. Housing Discrimination

To establish a prima facie case of discrimination under the FHA, a plaintiff must allege that: (1) he is a member of a protected class; (2) he sought and was qualified to rent or purchase the housing; (3) he was rejected; and (4) the housing opportunity remained available to other renters or purchasers. *Mitchell v. Shane*, 350 F.3d 39, 47 (2d Cir. 2003). The FHA "require[s] that plaintiffs show the existence of a disability within the meaning of the FHA in order to state a claim under these subsections." *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 40 (2d Cir. 2015). A plaintiff's failure to specify the nature of his disability supports a finding that

he has failed to state a claim under the FHA.  *Spavone v. Transitional Servs. of N.Y. Supportive Hous. Program (TSI)*, No. 16 Civ. 1219, 2016 WL 2758269, at *5 (E.D.N.Y. May 12, 2016).

The FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section . . . 3604[.]" 42 U.S.C. § 3617.  The statute "safeguards members of the protected class from coercion, intimidation, threats, or interference in the exercise or enjoyment of their Fair Housing Act rights." *Frazier v. Rominger*, 27 F.3d 828, 833 (2d Cir. 1994).  "The elements of a prima facie retaliation claim under the FHA are (1) the plaintiff engaged in protected activity, (2) the defendant was aware of this activity, (3) the defendant took adverse action against the plaintiff, and (4) a causal connection exists between the protected activity and the adverse action." *Wilson v. Wilder Balter Partners, Inc.*, No. 13 Civ. 2595, 2015 WL 685194, at *8 (S.D.N.Y. Feb. 17, 2015) (citations omitted).

"[C]ommon to all housing discrimination claims under the FHA, NY[S]HRL, [and the] ADA . . . is the requirement that . . . '[] plaintiff[s] show that [they were] qualified for an available benefit and w[ere] denied that benefit.'" *Johnson v. Levy*, 812 F. Supp. 2d 167, 180 (E.D.N.Y. 2011) (citation omitted).  Moreover, "to survive a motion to dismiss[,] the plaintiff[s] must plead more than the conclusory assertion that they met the stated requirements and therefore were qualified to rent or purchase the housing." *Id.* at 181 (quotation marks and citation omitted).  The "plaintiff[s] must allege facts from which the court can infer that they satisfied any necessary preconditions." *Id.* (quotation marks and citation omitted); *Wilder Balter Partners, Inc.*, 2015 WL 685194, at *9 ("The exhibits appended to the [complaint] and the allegations therein leave insufficient room for the [c]ourt to infer that [p]laintiffs satisfied the

necessary preconditions to qualify for a two-bedroom apartment," *id.* at *11 (quotation marks, citation and alterations omitted)).  Section 1982, NYSHRL, and NYCHRL housing discrimination claims are analyzed under the same standard as FHA claims.  *Haber v. ASN 50th St. LLC*, 847 F. Supp. 2d 578, 588 (S.D.N.Y. 2012).

Plaintiffs fail to allege facts from which the court can infer that they were qualified for a Mutual apartment.  Plaintiffs allege that Keany swore that "all prospective tenants, except for Tzvee Wood, have timely submitted copies of their income tax returns and/or proof of employment and/or income."  Compl. ¶ 80.  They also allege that "Mutual considers the creditworthiness of incoming tenant-shareholders through various methods, including credit reports."  *Id.* ¶ 281.  Plaintiffs do not claim that they submitted income tax returns, proof of employment or income, or information for a credit check.  Instead, they state that they "were financially qualified for credit including any credit relating to the apartment" and that their "qualifications were based upon factors including, but not limited to . . . income."  *Id.* ¶¶ 377–78.  Plaintiffs do not claim that they followed the procedures to be considered for a Mutual apartment.  Instead, Plaintiffs claim that their application was placed on "hold," converted to a "freeze" at some point, and then "reactivated" on October 11, 2017.  *Id.* ¶¶ 65–66, 73, 75–76, 211–15.  Plaintiffs also allege that failure to process Wood's reasonable accommodation request was retaliatory.  *Id.* ¶¶ 128, 150, 152–54, 158.  However, these allegations do not support the inference that Plaintiffs were qualified for a Mutual apartment.

Even if Plaintiffs had alleged that they were qualified to purchase a Mutual apartment, they have not stated a claim for discrimination.  For example, Plaintiffs allege that Wood "belongs to the protected classes, including but not limited to: . . . disability."  *Id.* ¶ 58.  They claim that, on November 7, 2012, Wood requested a reasonable accommodation and "provided

medical documentation identifying his medical condition." *Id.* ¶¶ 125–26.  They fail to specify the nature of Wood's disability, and instead make conclusory allegations that he has a disability under the FHA.  This is not enough to state a claim for disability discrimination.  *Spavone*, 2016 WL 2758269, at *5.

Accordingly, Defendants' motions to dismiss Plaintiffs' discrimination claims are GRANTED.

IV. Equal Credit Opportunity Act

To state a claim under the ECOA, a plaintiff must establish that: "(1) he was a member of a protected class, (2) he applied for credit from the defendant, (3) he was qualified for credit but the defendant denied his credit application, and (4) the defendant continued to engage in the type of transaction in question with other parties with similar qualifications." *Germain v. M & T Bank Corp.*, 111 F. Supp. 3d 506, 526 (S.D.N.Y. 2015) (quotation marks, citation, and alterations omitted).

Plaintiffs do not allege that they applied for credit from Defendants.  They only allege that they "were financially qualified for credit" and that their "qualifications were based upon factors including, but not limited to, income."  Compl. ¶¶ 377–78.  Accordingly, Defendants' motions to dismiss Plaintiffs' ECOA claims are GRANTED.

V. 42 U.S.C. § 1985

Section 1985(3) creates a cause of action against those who conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws[.]"  42 U.S.C. § 1985(3).  To prove a violation of § 1985(3), a plaintiff must show the existence of "(1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal

13

privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). The conspiracy "need not be shown by proof of an explicit agreement but can be established by showing the 'parties have a tacit understanding to carry out the prohibited conduct.'" *Id.* (citation omitted). Further, it must be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (citation omitted). "[Section 1985(3)] does not create any substantive right but rather provides a remedy for conspiracies that violate a person's right to equal protection." *Favourite v. 55 Halley St., Inc.*, 381 F. Supp. 3d 266, 283 (S.D.N.Y. 2019) (quotation marks and citation omitted).

Even assuming that an FHA violation can form the basis for a § 1985(3) cause of action, *cf. Sheikh v. Rabin*, No. 11 Civ. 425, 2012 WL 5471085, at *8 (N.D. Ill. Nov. 9, 2012), *aff'd* 565 Fed. App'x 512 (7th Cir. 2014) ("[T]he FHA does not give rise to a cause of action under § 1985(3)."), Plaintiffs provide no factual basis supporting a reasonable inference that Defendants "entered into an agreement, express or tacit, to achieve the unlawful end[,]" *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (quotation marks and citation omitted). Even if the complaint could be read to allege that Santiago and Keany communicated with each other, with their lawyers, and with their insurers, Compl. ¶¶ 92–106, 155–57, Plaintiffs' vague allegations do not plausibly establish a conspiracy. *Frederick v. Cap. One Bank (USA), N.A.*, No. 14 Civ. 5460, 2015 WL 5521769, at *9 (S.D.N.Y. Sept. 17, 2015), *opinion amended on other grounds on reconsideration sub nom. Frederick v. Cap. One (USA) N.A.*, No. 14 Civ. 5460, 2015 WL 8484560 (S.D.N.Y. Dec. 8, 2015).

Accordingly, Defendants' motions to dismiss Plaintiffs' § 1985 claims are GRANTED.

VI.     New York General Business Law

Plaintiffs allege that Defendants violated GBL §§ 349 and 350, state statutes that prohibit deceptive business practices and false advertising. Compl. ¶ 435. Mutual and PSSS contend that Plaintiffs fail to allege a deceptive act under these statutes. Mutual Br. at 28, ECF No. 51; PSSS Br. at 7–8, ECF No. 42. "To state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *see also Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). Because § 349 is "directed at wrongs against the consuming public," the plaintiff must allege conduct that is "consumer-oriented," that is, that consists of "acts or practices [that] have a broader impact on consumers at large." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 647 N.E.2d 741, 744 (N.Y. 1995). Accordingly, "[p]rivate contract disputes, unique to the parties, . . . would not fall within the ambit of the statute." *Id.* "The standard for recovery under [GBL] § 350, while specific to false advertising, is otherwise identical to [§] 349." *New World Sols., Inc. v. NameMedia, Inc.*, 150 F. Supp. 3d 287, 330 (S.D.N.Y. 2015) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 n.1 (N.Y. 2002)). Therefore, the Court will use the same analysis for each claim. *See id.* at 329–32.

Plaintiffs allege that they are consumers, Compl. ¶ 241, that Defendants targeted them, *id.* ¶¶ 203–04, and that Defendants treated them differently from other applicants, *id.* ¶ 160 ("[T]he information about the number of rejections was made available to other applicants[.]"). Because the allegations underlying Plaintiffs' § 349 claim stem from interactions between Mutual and Plaintiffs, these interactions involve a "single-shot transaction" and do not show the potential

15

"broad impact on consumers at large" necessary to sustain a § 349 claim. *Waverly Props., LLC v. KMG Waverly, LLC*, 824 F. Supp. 2d 547, 566 (S.D.N.Y. 2011).

Although they allege that Defendants rush applicants and disregard their rights, Compl. ¶¶ 306–10, and that Mutual falsely advertises itself as "Equal Opportunity Housing," *id.* ¶¶ 313–19, Plaintiffs provide no facts other than these conclusory statements indicating that Defendants direct their behavior towards consumers at large.  Moreover, these allegations are nearly identical to their allegations in the First Action that Mutual "routinely . . . rush[es] incoming owners," "frequently skip[s] over owners," and generally "disregard[s] [the] rights . . . of buyers on the waiting list[.]"  *See* First Action Compl. ¶¶ 246–48.  Dismissal of these claims is warranted because they are merely a repackaged version of Plaintiffs' GBL claims in the First Action.  *Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another federal court suit.").

Accordingly, Defendants' motions to dismiss Plaintiffs' GBL claims are GRANTED.

VII.    Fair Credit Reporting Act

The FCRA provides a cause of action against "[a]ny person who willfully fails to comply" or who "is negligent in failing to comply" with one of its requirements.  15 U.S.C. §§ 1681a, 1681n(a), 1681o(a).  The FCRA includes requirements "not [to] use or obtain a consumer report" for an impermissible purpose, *id.* § 1681b(f), and not to willfully obtain "information on a consumer from a consumer reporting agency under false pretenses[,]" *id.* § 1681q.

Plaintiffs allege that "Mutual and others *may* have engaged in [FCRA] violations." Compl. ¶ 437 (emphasis added).  Plaintiffs state that Mutual uses credit reports, and that those

reports are requested by Mutual staff.  *Id.* ¶¶ 238–39, 281.  Plaintiffs do not allege how Mutual's purported use of credit reports violates the FCRA.  Without more, they have failed to state a claim under this statute.

Accordingly, Mutual's motion to dismiss Plaintiffs' FCRA claim is GRANTED.

VIII.    Rule 72 Objections

Plaintiffs "seek the [C]ourt's analysis" on the theoretical basis for sealing disability-related information, Pl. Obj. at 2–3, argue that documents designated confidential between the parties require sealing, *id.* at 3–4, and that Judge Freeman should have preemptively sealed Plaintiffs' forthcoming filings, *id.* 5–8.

The June Order was not clearly erroneous.  Documents designated as confidential by the parties are not automatically entitled to sealing by the Court.  *See In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 224 (S.D.N.Y. 2006) (permitting designation of discovery material as confidential but "not permit[ting] such materials to be filed under seal").  Judge Freeman did not err in directing Plaintiffs to comply with her individual practices.  June Order.  Because Plaintiffs made their request to seal their hypothetical opposition days before it was due, ECF No. 70, Judge Freeman even extended their deadline by fifteen days to allow them to comply with her individual practices.  June Order.  Instead, Plaintiffs filed a request for an extension of time to object to Judge Freeman's order, ECF No. 74, nine single-spaced pages of objections to her six-sentence text order, Pl. Obj., and a sixteen-page reply, ECF No. 83, despite the Court's clear order prohibiting Plaintiffs from filing a reply, ECF No. 82.  Plaintiffs failed to file a motion to seal despite clear and unambiguous orders and rules.

Accordingly, Plaintiffs' objections are OVERRULED and the June Order is AFFIRMED.

17

IX.     Leave to Amend

Plaintiffs have not sought leave to amend their complaint.  Although Rule 15(a)(2) states that a court should "freely give leave [to amend] when justice so requires," a court "should not grant a plaintiff the right to amend when such amendment would be futile," such as when the amended complaint could not withstand a Rule 12(b)(6) motion to dismiss.  *Malester v. Adamo*, No. 09 Civ. 9347, 2010 WL 5065865, at *2 (S.D.N.Y. Dec. 8, 2010).  Generally, a court "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2009).  However, "dismissal [of a *pro se* complaint without granting leave to amend] is appropriate where leave to amend would be futile."  *Tylicki v. Schwartz*, 401 Fed. App'x. 603, 604 (2d Cir. 2010).

Even reading Plaintiffs' complaint liberally, Plaintiffs plead no facts suggesting that they have viable claims.  Aside from the four actions brought to date relating to their dispute with Defendants,[4] Plaintiffs have initiated at least eight other cases against other parties ranging from SoulCycle to a roofing company, in state, federal, and administrative courts.[5]  Plaintiffs have been filing lawsuits at least since 1999.  *See* Note 5.  Moreover, Wood has received a formal legal education—he was "actively enrolled in law school" for five semesters.  First Action

---

[4] *Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 19 Civ. 9563 (S.D.N.Y. Oct. 11, 2019); *Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 18 Civ. 726 (S.D.N.Y. Jan. 26, 2018); *Wood et al. v. Mutual Redevelopment Houses, Inc. et al.*, No. 14 Civ. 7535 (S.D.N.Y. Sept. 17, 2014); *Wood v. Mutual Redevelopment Houses, Inc*, Index No. 101354/2018 (N.Y. Sup. Ct. Apr. 1, 2019).

[5] *Malester v. Mauceri*, No. 11 Bankr. 9563 (Bankr. E.D.N.Y. Dec. 27, 2011); *Wood v. City of Long Beach*, No. 10 Civ. 3421 (E.D.N.Y. July 26, 2010); *Malester v. Adamo*, No. 09 Civ. 9347 (S.D.N.Y. Nov. 10, 2009); *Wood v. Gen. Motors Corp.*, No. 08 Civ. 5224 (E.D.N.Y. Dec. 29, 2008); *Wood v. SoulCycle Inc.*, Index No. 100711/2017 (N.Y. Sup. Ct. Mar. 2, 2018); *Wood v. City of Long Beach*, Index No. 0011804/2009 (N.Y. Sup. Ct. June 30, 2009); *Wood v. NYU Hosps. Ctr.*, Index No. 0119109/2006 (N.Y. Sup. Ct. Jan. 29, 2008); *Austin Wood ex rel. Tzvee Wood v. Bd. of Educ. of the City of Long Beach*, Decision No. 14,213 (Sept. 23, 1999), *available at* http://www.counsel nysed.gov/Decisions/volume39/d14213.

Summary Judgment Order at 13.  Accordingly, Plaintiffs are not entitled to the high degree of leniency usually afforded to *pro se* plaintiffs.  *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[A] lawyer representing himself ordinarily receives no [*pro se*] solicitude at all.").

Therefore, the Court dismisses Plaintiffs' complaint without leave to amend.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss Plaintiffs' complaint are GRANTED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 40, 45–46, to mail a copy of this order, and all unpublished opinions cited therein, to Plaintiffs *pro se*, and to close the case.

SO ORDERED.

Dated:  September 17, 2021
        New York, New York

_____
ANALISA TORRES
United States District Judge